**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Trujillo, et al., | No. CV-25-00706-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| City of Chandler, et al., | |
| Defendants. | |

Before the Court is Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 15), Plaintiffs' Response (Doc. 20), and Defendants' Reply (Doc. 26). For the following reasons, the Court will grant Defendants' Motion.[1]

**I.   BACKGROUND**

Plaintiffs Mark and Alba Trujillo, on behalf of themselves and their three minor children, bring various claims against Defendants connected to the shooting of Plaintiff Mark Trujillo. (Doc. 8 at 2). On March 3, 2024, Plaintiff Mark Trujillo contacted the Chandler Police Department to notify them that "an unstable next-door neighbor Luciano Gutierrez" had been threatening one of Trujillo's daughters. (*Id.*). Defendant Officer Nicholas Buenrostro and Defendant Officer-In-Training Margaret Diaz (collectively, "Defendant Officers") reported to the scene with other Chandler Police Department

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

officers. (*Id.*).

Plaintiff Mr. Trujillo was standing outside his home as the officers attempted to communicate with Gutierrez. (*Id*.). "As Gutierrez appeared in his doorway, other officers (besides Buenrostro and Diaz) fired multiple shots at Gutierrez, hitting and knocking him to the ground." (*Id.*). Mr. Trujillo began to "hurry across the driveway towards his home as the gunshots ran out." (*Id.*). As Mr. Trujillo crossed his driveway, Officer Buenrostro—who had parked down the street several houses away with Officer Diaz—fired a shot at Mr. Trujillo that severed his spinal cord. (Doc. 8 at 2). This spinal cord injury paralyzed Mr. Trujillo, and he "will be paraplegic for the rest of his life." (*Id.* at 2, 7).

Plaintiffs assert that Defendant Officers Buenrostro and Diaz had an obligation to confirm whether it was safe to shoot before doing so and to confirm the identity of the target before shooting Mr. Trujillo. (*Id.*). Their alleged failure to meet these obligations gives rise to Plaintiffs' constitutional claims and tort claims under state statutory and common law. (*See generally* Doc. 8). Plaintiffs also assert that Defendant City of Chandler ("Defendant Chandler") is vicariously liable for the tortious conduct of the Defendant Officers and is directly liable for negligence/gross negligence in training and supervision and violations of the Fourth and Fourteenth Amendment. (*Id.* at 3–7, 9).

On February 28, 2025, Plaintiffs filed the present suit. (Doc. 1). On March 25, 2025, Plaintiffs filed the operative First Amended Complaint ("FAC"). (Doc. 8). On June 2, 2025, Defendants collectively filed the present Motion to Dismiss, which has been fully briefed. (Docs. 15, 20, 26).

## II.   LEGAL STANDARD

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT, 2012 WL 79882, at \*1 (D. Ariz. Jan. 11, 2012); *see also Int'l Energy Ventures Mgmt. v. United Energy Grp.*, 818 F.3d 193, 203 (5th Cir. 2016) (Rule 12(b)(6) provides "the one and only method for testing" whether pleading standards set by Rule 8 and 9 have been met); *Hefferman v. Bass*, 467 F.3d 596, 599–600 (7th Cir. 2006) (Rule 12(b)(6) "does not

stand alone," but implicates Rules 8 and 9. Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024) (citation omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III.   DISCUSSION**

Defendants raise various arguments for the dismissal of Plaintiffs' multiple causes of action. Additionally, both parties seek to submit evidence outside the pleadings to support their arguments. This Court will first determine whether it may consider the exhibits attached to Defendants' Motion and Plaintiffs' Response before addressing Defendants' arguments that Plaintiffs' Amended Complaint fails to state claims upon which relief may be granted.

    **a.  Evidence Outside the Pleadings**

A threshold issue central to the parties' arguments is whether they can introduce extrinsic evidence at the Motion to Dismiss stage. Specifically, both parties seek to submit the police officers' body-worn camera (BWC) footage and Ring doorbell camera footage.[2]

---

[2] Plaintiffs' Response also includes references to a transcript of an interview of Defendant Buenrostro and National Rifle Association gun safety rules. (Doc. 20 at 11–13). This evidence is not mentioned in the pleadings nor a matter of public record. Moreover, a Rule 12(b)(6) motion challenges the sufficiency of a *complaint*, and the Court is limited to

(Doc. 15 at 5; Doc. 20 at 2).

Generally, a district court may not consider extrinsic evidence in determining the legal sufficiency of a complaint's allegations under a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "[I]f a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Because both parties failed to follow the Federal Rules of Civil Procedure or the Court's local rules for filing a Motion for Summary Judgment and considering the undeveloped record at this early stage of the case, the Court declines to convert the Motion to Dismiss into a Motion for Summary Judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d) ("If on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

A court may consider outside evidence without converting the motion to a summary judgment motion under two circumstances. One, a court may take judicial notice of matters of public record in considering a 12(b)(6) motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Two, a court may consider evidence on which the complaint necessarily relies if its authenticity is uncontested under the incorporation by reference doctrine. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).

A court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute." Fed. R. Evid. 201(b). The Ninth Circuit has held that "[c]ourts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *Ritchie*, 342 F.3d at 909 (citing *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). However, courts may not take judicial notice of facts that are in dispute or subject to varying interpretations. *See generally Sanz v. City of Vallejo*, 2:19-CV-02134-TLN-DB, 2021 WL 2682162, at *3 (E.D. Cal. June 30, 2021).

---

the facts on the face of the Complaint in its review. As such, the Court will not consider these documents at this time.

Under the incorporation by reference doctrine, courts may consider extrinsic evidence, including police body camera recordings, that the complaint necessarily relies upon, if the evidence's authenticity is not contested. *Lihosit v. Flam*, No. CV-15-01224-PHX-NVW, 2016 WL 2865870, at *3 (D. Ariz. May 17, 2016). The complaint must "refer extensively" to the extrinsic evidence or the evidence must form the basis of or be integral to plaintiff's claim in order to be admissible under the incorporation by reference doctrine. *Ritchie*, 342 F.3d at 907. Mere mention of the existence of a document is insufficient. *Id.* at 908. Other district courts in the Ninth Circuit have found it appropriate to consider evidence, such as body camera footage, when the "complaint necessarily relie[d] on the circumstances surrounding" the arrest and the plaintiff did not dispute the video's authenticity. *Lihosit*, 2016 WL 2865870, at *3; *see also Covert v. City of San Diego*, No. 15-CV-2097 AJB (WVG), 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017) (considering footage that "reveals the circumstances surrounding Plaintiff's claims" and was undisputed by Plaintiff). However, if the extrinsic evidence "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002. "Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint," and deprives the plaintiff of the "opportunity to respond to the defendant's new version of the facts." *Id.* at 1003.

Here, Plantiff's FAC relies on the BWC footage to form the basis of its factual allegations about what was said by the Defendant Officers and other officers at the incident. (Doc. 8 at 4). Plaintiff's Response to the Motion to dismiss also submits clips from the Officers' BWC footage as exhibits. (Doc. 20 at 2). Thus, the Court finds that the BWC footage is admissible under the incorporation by reference doctrine, as it forms the basis of Plaintiffs' complaint, and its authenticity is unquestioned by either party. Additionally, the Court concludes it may consider the Ring camera footage submitted by the parties, as the complaint necessarily relies on the circumstances depicted in the video footage, and both parties encourage the consideration of this footage. (*Id.* at 3).

### b. Count One: Negligence/Gross Negligence

Defendants argue that Plaintiffs' Negligence/Gross Negligence claim necessarily fails, as a plaintiff cannot succeed on a negligence claim for intentional acts under Arizona law. (Doc. 15 at 6).

Defendants correctly assert that the Arizona Supreme Court has held that negligence claims cannot be based solely on an officer's intentional use of force. *See Ryan v. Napier*, 425 P.3d 230, 233 (2018). Here, Plaintiffs allege no negligent conduct by the Defendant Officers independent of the use of force—specifically, the shooting. *See Harris v. City of Phoenix*, No. 22-16307, 2023 WL 6635077, at *1 (9th Cir. 2023). The Amended Complaint sets forth that Officer Buenrostro intentionally shot Mr. Trujillo based on his incorrect belief that Mr. Trujillo was the armed criminal suspect, Gutierrez. (Doc. 8 at 4–5). Although Plaintiffs argue in their Response that not all shootings are intentional—pointing to incidents of accidental discharges—and that unintentional shooting can support a negligence claim, that is not the case here, nor is such an inference plausible from the face of the Amended Complaint. (Doc. 20 at 7). Instead, the FAC pleads that Officer Buenrostro "identified the wrong target," "incorrectly believed that Mark was the criminal suspect Guitierrez," and shot Mark without confirming whether he was Guitierrez or not. (Doc. 8 at 4–5). These facts support an inference that Officer Buenrostro had a mistaken or allegedly negligently held belief about Mr. Trujillo's identity informing his intentional use of force, not that the use of force itself was unintentional. Indeed, the FAC's allegation that Officer Diaz was negligent "[b]y allowing Buenrostro to fire" further supports this inference, as it is unclear how Officer Diaz could allow or not allow an accidental discharge. (*Id.* at 5). While Plaintiffs may plead alternative theories of liability, Plaintiffs here do not include any allegations that the shooting was a result of an accidental discharge or other unintentional act that could give rise to a negligence claim. Ultimately, as Plaintiffs' FAC does not plead that the use of force leading to Mr. Trujillo's injuries was unintentional, it cannot support a negligence claim against Defendant Buenrostro.

Additionally, to the extent that Plaintiffs' FAC seeks to hold Defendants liable for

negligently identifying the wrong suspect or the assessment to shoot, this Court finds that liability cannot be premised on that basis. The Arizona Supreme Court has refused to recognize negligence liability resulting "from a law enforcement officer's 'evaluation' of whether to intentionally use force against another person." *Ryan*, 425 P.3d at 236. "A negligence claim requires 'an act' or a 'failure to act.'" *Id*. "An actor's internal evaluation about whether to use force and the decision to do so are not 'acts' and therefore cannot, by themselves, constitute negligence." *Id*. at 237*; see also Weber v. City of Kingman*, No. 1 CA-CV 21-0063, 2022 WL 1468246, at *2–3 (Ariz. Ct. App. 2022) (finding that negligence wrongful death claims based on pre-shooting tactical decisions and failure to engage in de-escalation techniques are barred). Moreover, to the extent that the Defendant Officers' misidentification of Mr. Trujillo, failure to confirm his identity, or communications that led to confusion constitute negligent acts and omissions, "they are not independent of the intentional use of force . . . because they led directly to that intentional use of force." *Torres v. Maricopa Cnty*., 1 CA-CV 23-0768, 2024 WL 4442857, at *3 (Ariz. Ct. App. Oct. 8, 2024), *review denied* (Apr. 1, 2025) (citation omitted) ("Appellants provide no case law supporting their position that Arizona permits a separate, actionable claim for negligent acts and omissions that later contributed to a separately actionable intentional battery."). Thus, Defendant Buenrostro's evaluations, tactical decisions on how to handle the incident, and other conduct leading up to the shooting cannot alone constitute negligence.

Likewise, Plaintiffs cannot proceed on a negligence claim against Defendant Diaz based on her conduct of "allowing Buenrostro to fire." (Doc. 8 at 5). Plaintiffs have not alleged facts demonstrating that Defendant Diaz had any control over Buenrostro's actions, and to the extent Plaintiffs allege her conduct led to Plaintiff Mark Trujillo's injuries, her actions would not be "independent of the intentional use of force . . . because they led directly to that intentional use of force." *Torres*, 2024 WL 4442857, at *3. To the extent that "Plaintiffs are not attempting to hold Diaz responsible for Buenrostro, but rather her own bumbling actions," as they assert in their Response, the Court finds that Plaintiffs have

7

not pled facts that plausibly support that Defendant Diaz's actions were the proximate cause of Plaintiffs' injuries, or that Plaintiffs have suffered damages resulting from Defendant Diaz's allegedly negligent conduct.

To that end, the Court was unable to identify—and Plaintiffs do not cite—any legal authority that establishes that a plaintiff may bring a negligence claim based on a police officer's alleged failure to intervene with another officer's conduct. Instead, the seemingly appropriate theory of liability is a "failure to intervene with excessive force" claim under the Fourth Amendment. Indeed, Plaintiffs assert in their Response that the negligence claim against Defendant Diaz shares the same basis for their Fourth Amendment claim. As further discussed below, Plaintiffs have not alleged facts from which this Court can plausibly infer that Defendant Diaz is liable under the Fourth Amendment by failing to intervene with Defendant Buenrostro's actions. Accordingly, the Court will dismiss Plaintiffs' negligence claims against Defendants Buenrostro and Diaz with leave to amend.

Lastly, because the Court finds that Plaintiffs have not adequately alleged that Defendants Buenrostro and Diaz were negligent, Defendant Chandler cannot be held vicariously liable. *Laurence v. Salt River Project Agric. Improvement & Power Dist.*, 528 P.3d 139, 150 (Ariz. 2023) ("Dismissing a tort claim against an employee because the claim lacks merit requires the court to also dismiss a claim against an employer under the doctrine of respondeat superior."). The negligence claim against Defendant Chandler will also be dismissed with leave to amend.

### c. Count Two: Vicarious Liability for Assault and Battery

Defendants seek to dismiss Plaintiffs' claims that Defendant Chandler is vicariously liable for alleged assault and/or battery of Mr. Trujillo. (Doc. 15 at 9).

Under A.R.S. § 12-820.05, "[a] public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action." A.R.S. § 12-820.05(B). "The conduct need not result in a felony conviction." *Gagne v. City of Mesa*, CV-24-01337-PHX-SHD, 2025 WL 2257508, at *11

(D. Ariz. Aug. 6, 2025) (citing *Garcia v. Garibay*, 2013 WL 1442505, at *3 (D. Ariz. 2013)); *see also Rand v. City of Glendale*, 1 CA-CV 07-0722, 2008 WL 5383363, at *6 (Ariz. Ct. App. Dec. 26, 2008) (holding that the trial court did not err in applying immunity under A.R.S. § 12-820.05 where the alleged conduct "would, if proven, constitute a felony under Arizona law."). Courts have found that in Arizona, an allegation that a police officer unjustifiably shot an individual is a theory of intentional force akin to aggravated assault, a criminal felony.[3] *Harris v. Phoenix*, No. CV-20-00078-PHX-DLR, 2021 WL 4942662, at *2 (D. Ariz. Oct. 22, 2021); *Betancourt v. City of Phoenix*, 1 CA-CV 16-0361, 2017 WL 5586533, at *4 (Ariz. Ct. App. Nov. 21, 2017). In order for a public entity to be liable for an employee's intentional use of force, it must actually know of the employee's propensity to commit that particular act. *Harris*, 2021 WL 4942662, at *1; *see also* A.R.S. § 12-820.05(B). Here, the FAC does not allege that Defendant Buenrostro had a propensity to shoot, nor that Defendant Chandler had any knowledge of such a propensity. As such, Plaintiffs fail to state a claim that Defendant Chandler is vicariously liable for Defendant Buenrostro's alleged assault and/or battery of Mr. Trujillo. The Court will dismiss Count Two against Defendant Chandler and grant Plaintiffs' leave to amend.

### d. Count Three: Negligent Training and Supervision

As noted above, "[i]n order for the employer to be held liable for negligent hiring, retention or supervision, the employee must have committed a tort." *Mulhern v. City of Scottsdale*, 799 P.2d 15, 18 (Ariz. Ct. App. 1990) (collecting cases). "Thus, the employer is not negligent in hiring or retaining the employee as a matter of law if the theory of the employee's underlying negligence fails." *Id.*; *see also Khalaj v. City of Phoenix*, CV1701199PHXGMSJZB, 2022 WL 21296196, at *9 (D. Ariz. May 26, 2022), *aff'd*, 22-16820, 2023 WL 7101933 (9th Cir. Oct. 27, 2023) ("It follows that absent an underlying

---

[3] A person commits criminal aggravated assault if the person "[i]ntentionally, knowingly or recklessly" (1) causes serious physical injury to another; (2) uses a deadly weapon or dangerous instrument; or (3) causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part. A.R.S. § 13–1203(A), –1204(A).

9

tort, Plaintiffs' negligent training and supervision claim against the City is barred.").

Although Plaintiffs' negligence theories fail to plausibly allege a cause of action, some of Plaintiffs' underlying tort theories will proceed—Defendants do not seek dismissal of Counts Two, Five and Six against Officer Buenrostro. However, all told, the Court finds that Plaintiffs' factual allegations fall short in plausibly asserting that Defendant Chandler was negligent in training or supervising the Defendant Officers.

"To prevail on a negligent training claim, a plaintiff must show a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of a plaintiff's injuries." *Inmon v. Crane Rental Servs., Inc*., 67 P.3d 726, 733 (Ariz. Ct. App. 2003), *disapproved of on a different ground*, *Tarron v. Bowen Mach. & Fabricating*, 235 P.3d 1030 (Ariz. 2010). Showing that an employee was incompetent is not enough; a plaintiff must assert and prove what training should have been provided. *Id.*

Here, Plaintiffs merely allege that the Defendant Officers' training "was clearly deficient, in that they fired upon an unarmed man several seconds after other officers fired on the actual threat" and that Defendant Chandler "failed to provide adequate training and supervision . . . on such standard professional practices." (Doc. 8 at 6). The FAC does not allege facts that demonstrate how the Defendant Officers' training was negligent nor that the negligent training or lack thereof was the proximate cause of Mr. Trujillo's injuries. Therefore, Plaintiff's state negligent training and supervision claim will be dismissed. However, as supplemental facts could cure these deficiencies, Plaintiffs will be granted leave to amend.

### e. Count Four: Negligent Infliction of Emotional Distress

Plaintiffs Alba Trujillo and the Minor Children were "huddled in the nearby laundry room" when Defendant Buenrostro fired the shot that struck Mr. Trujillo outside of the family residence. (Doc. 8 at 7). Plaintiffs allege that they have suffered emotional distress and suffering that has manifested in physical symptoms, and that as such, Defendants are liable for negligent infliction of emotional distress ("NIED"). (*Id.*). Defendants argue that Plaintiffs Alba and Minor Children were not in the "zone of danger" necessary to sustain

NIED claims and that Plaintiffs did not sufficiently allege a manifestation of physical symptoms. (Doc. 15 at 12–13).

"A negligent infliction of emotional distress cause of action requires the plaintiff to: (1) witness an injury to a closely related person, (2) suffer mental anguish manifested as physical injury, and (3) be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." *Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989). "Arizona courts have long held that a claim for negligent infliction of emotional distress requires a showing of bodily harm." *Monaco v. Health Partners of S. Ariz.*, 995 P.2d 735, 738 (Ariz. Ct. App. 1999) (citing *Keck v. Jackson*, 593 P.2d 668 (Ariz. 1979)).

Here, Plaintiffs merely allege that they "have suffered emotional distress and suffering that has been manifested by physical symptoms" without asserting facts that demonstrate they have manifested physical injuries or describing what those injuries are. (Doc. 8 at 7). Plaintiffs must assert factual allegations, rather than mere legal conclusions, supporting the inference that they are entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("A plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" (cleaned up)). To that end, the FAC does not allege that Alba or the Minor Children actually witnessed the injury to Mr. Trujillo, which is a requisite element of an NIED claim in Arizona. *State Farm Mut. Auto. Ins. Co. v. Connolly ex rel. Connolly*, 132 P.3d 1197, 1203 (Ariz. Ct. App. 2006) ("[T]he negligent infliction of emotional distress plaintiff's injury is due to the unique experience of having witnessed, at such close range as to be in the "zone of danger," the event that caused the injury to the other person."); *Odriozola v. Wood*, 1 CA-CV 23-0295, 2024 WL 1210074, at *2 (Ariz. Ct. App. Mar. 21, 2024), *review denied* (Aug. 19, 2024) (finding plaintiffs did not witness the incident sufficient to establish NIED claim when they "admitted they did not see the event that caused [the decedent's] injury, and instead saw only the aftermath of the accident."). While Plaintiffs' Response asserts that they witnessed the series of events

(Doc. 20 at 14, 20), "[i]n reviewing a motion to dismiss for failure to state a claim, this Court's review is limited to the contents of the complaint." *Vaughn v. Partners Mgmt.*, CIV02-065-TUC-WDB, 2002 WL 32843964, at *2 (D. Ariz. July 8, 2002). Accordingly, the Court will dismiss Plaintiffs' NIED claim with leave to amend.

### f. Count Five: Loss of Consortium

Defendants seek to dismiss Plaintiffs' Loss of Consortium claim against Defendant Officer Diaz. (Doc. 15 at 13). "An individual may make a claim for loss of consortium against a tortfeasor whose conduct caused the claimant to lose 'society, companionship, care, support, and affection' within a marital or parent-child relationship." *Martin v. Staheli*, 457 P.3d 53, 58 (Ariz. Ct. App. 2019). In Arizona, "[l]oss of consortium is a derivative claim, which means that the success of a loss-of-consortium claim is dependent on the success of another claim." *Id.* (citations omitted). Here, Defendants are correct that the loss of consortium claim should be dismissed against Defendant Officer Diaz, because the negligence, NIED, and Fourth Amendment claims against her are dismissed. *See Gagne v. City of Mesa*, CV-24-01337-PHX-SHD, 2025 WL 2257508, at *13 (D. Ariz. Aug. 6, 2025). However, Plaintiffs are granted leave to amend their loss of consortium claim against Defendant Diaz, along with their other underlying tort claims against Defendant Diaz.

### g. Count Seven: Loss of Familial Relationship under the 14th Amendment

Defendants argue that Plaintiffs' loss of familial relationship claim against Defendant Buenrostro fails, because (1) the Ninth Circuit does not recognize a cause of action for a spouse to raise a 14th Amendment claims and (2) the FAC does not include facts sufficient to plead the Minor Children's loss of relationship. (Doc. 15 at 15).

The Fourteenth Amendment right to family or familial association is well established. *Branum v. City of Phoenix*, CV 21-00357-TUC-RM, 2022 WL 20741828, at *3 (D. Ariz. July 1, 2022) (citing *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011)). This right is clearly recognized for the parent-child relationship. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Wilkinson v. Torres*, 610 F.3d 546,

554 (9th Cir. 2010). However, the Ninth Circuit has not explicitly recognized or foreclosed the availability of such a claim for spouses. *Branum*, 2022 WL 20741828, at *3 (discussing lack of Ninth Circuit precedent and collecting district court cases recognizing spousal claims to familial association); *see also Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) (noting that the Ninth Circuit has not previously held whether a substantive due process right exists for spouses and declining to consider the issue as the familial-association claim failed on other grounds). However, the Court finds it unnecessary to determine whether a loss of familial association claim is available to spouses at this time, as Plaintiffs' claim fails on other grounds.

In order for official conduct to violate a parent's due process rights, the conduct must "shock the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Courts consider the facts of the case in order to determine if an officer's conduct meets the "shocks the conscience" standard. *Id*. In urgent, emergency situations that necessitate fast action and involve competing public safety obligations, a plaintiff must show that an official acted with a "purpose to harm" for reasons other than legitimate law enforcement objectives to meet the "shocks the conscience" standard. *Id.* at 1137–39; *see also Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998), *as amended* (Nov. 24, 1998) (finding purpose to harm standard appropriate when police responded to a gunfight in a large crowd because it was an extreme emergency); *Peck*, 51 F.4th at 893 ("We apply the purpose-to-harm standard when officials were required to make 'repeated split-second decisions' about how best to respond to a risk, such as during a high-speed car chase or when confronting a threatening, armed suspect."). Alternatively, an official's "deliberate indifference" may violate a parent's Fourteenth Amendment rights under certain circumstances. *Porter*, 546 F.3d at 1137. For instance, deliberate indifference may rise to the level of shocking the conscience in situations where officers had extended opportunities for actual deliberation and still engaged in unconstitutional conduct. *Id.* at 1137–39. This standard is appropriate "when officials had 'ample time to correct their obviously [wrongful conduct],' such as in Eighth Amendment prisoner-treatment cases or

in wrongful-detention cases." *Peck*, 51 F.4th at 893 (citing *Porter*, 546 F.3d at 1139).

In the present case, the Court finds that the purpose to harm, rather than deliberate indifference, standard is appropriate. Plaintiffs' FAC alleges facts that demonstrate the incident was akin to an urgent, dangerous emergency. Police were responding to reports of an armed and unstable individual, Plaintiffs' neighbor Gutierrez. (*See* Doc. 8 at 2; Doc. 15-1, Defs.' Ex. 1). Despite Plaintiffs' argument that "there was an extended period of silence and inactivity between gunning down the suspect Guitierrez and shooting Mark in the back from over 100 yards away"—which the Court finds unpersuasive given Plaintiffs' assertion one paragraph prior that Buenrostro's shot was fired five (5) seconds after the other officers' shots at Gutierrez—the Court finds that the circumstances reflect an emergency situation rather than an extended opportunity for reflection and action, such as a lengthy detention. (Doc. 20 at 4–5). While the FAC makes several assertions that Defendant Officers should have confirmed Mr. Trujillo's identity before shooting, it does not allege that the Officers had ample time to contemplate their conduct, and this case is not akin to the kind of prison custodial situations that have utilized the deliberate indifference standard. *See generally Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851–52 (1998) ("But just as the description of the custodial prison situation shows how deliberate indifference can rise to a constitutionally shocking level, so too does it suggest why indifference may well not be enough for liability in the different circumstances of [a high-speed auto chase].").

Under the purpose to harm standard, a plaintiff must show that a defendant acted with a purpose to harm that was unrelated to legitimate law enforcement objectives. *Porter*, 546 F.3d at 1137. Conduct such as purely reactive decision-making or responding to an emergency weighs against a purpose to harm finding. *See id*. at 1140. Instead, a plaintiff must show that an officer's intention was "to cause harm unrelated to the legitimate object of arrest," "induce . . . lawlessness, or to terrorize, cause harm, or kill," or to "teach [the suspect] a lesson" or "get even." *Id.* (citations omitted). Absent evidence of such intentions or evidence that an "officer's reaction was driven by anything other than his 'instinct … to

14

do his job as a law enforcement officer,'" an officer will escape liability under the purpose to harm standard, even if the officer misperceived danger or acted irresponsibly. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (citing *Lewis*, 523 U.S. at 855).

Here, Plaintiffs merely assert that "Defendant Officers Buenrostro's and Diaz's acts and/or omissions furthered no legitimate law enforcement interest" and that "Defendant Officers Buenrostro's and Diaz's acts and/or omissions were unrelated to any legitimate law enforcement activities and/or objectives."[4] (Doc. 20 at 9). As noted above, more than a mere "a formulaic recitation of the elements of a cause of action" is needed to meet the Rule 8 pleading standard. *See Twombly*, 550 U.S. at 555 (2007).[5] The Court finds these allegations are conclusory and do not include facts sufficient to support a finding that Defendant Buenrostro acted with a purpose to harm that was unrelated to his attempt to do his job. *See Coleman v. Las Vegas Metro. Police Dep't*, No. 21-16269, 2022 WL 3594272, at *1 (9th Cir. 2022) ("Plaintiffs' failure to assert non-conclusory allegations regarding Officer Peacock's intent to harm is fatal to their 42 U.S.C. § 1983 substantive due process claim."). In sum, Plaintiffs' FAC does not plausibly allege that Plaintiffs entitled to relief on their loss of familial relationship claim, and thus, dismissal of Count Seven against Officer Buenrostro is warranted. However, because new facts could remedy Plaintiff's conclusory allegations, the Court finds that leave to amend is appropriate.

### h. Count Eight: Supervisor Liability under the Fourth and 14th Amendment

Plaintiffs also seek to hold Defendant City of Chandler liable as a supervisor under the Fourth and Fourteenth Amendment for its failure to train the Defendant Officers. (Doc. 8 at 9). Plaintiffs assert that "Defendants Buenrostro's and Diaz's actions demonstrate a

---

[4] It is unclear why Plaintiffs point to Defendant Diaz's acts and/or omissions, as this claim is only brought against Defendant Buenrostro. (Doc. 20 at 8–9; Doc. 8 at 8).

[5] To the extent Plaintiffs imply that *Twombly* is distinguishable or inapplicable because it is a "complex antitrust conspiracy and price-fixing case" (Doc. 20 at 6 n.2), the Court notes that *Twombly* is widely recognized as one of the leading cases on the requirements under Federal Rule of Civil Procedure 8.

massive lapse in judgment and/or seriously deficient training" and that "[t]he acts and/or omissions have caused, and continue to cause, the Plaintiffs severe and permanent injuries." (*Id.*).

To properly allege failure to train under § 1983, a plaintiff must show (1) he was deprived of a constitutional right; (2) the municipality had a training policy that amounts to deliberate indifference of the constitutional rights of the person trained is likely to come into contact with; and (3) the constitutional injury would have been avoided had the municipality properly trained the employee. *Blunt v. Town of Gilbert*, CV-23-02215-PHX-SMB, 2024 WL 2722167, at *6 (D. Ariz. May 28, 2024) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Accordingly, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (cleaned up). "Similarly, to properly allege a claim for failure to supervise, a plaintiff must allege facts demonstrating that the supervision was 'sufficiently inadequate' to amount to 'deliberate indifference.'" *Hauser v. Smith*, CV2008138PCTJATJFM, 2021 WL 2262551, at *8 (D. Ariz. June 3, 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

Here, Plaintiff's Amended Complaint fails to include any allegations relating to any training policy held by Defendant City of Chandler or any lack of supervision. The allegations "do not provide any specifics about knowledge any policymaker had regarding any deficiencies in [City of Chandler's police officer] training program or about how any policymaker consciously or deliberately disregarded a potential risk by allowing a deficiency in its training to continue." *Id.* Nor do Plaintiffs "allege any other specific instances of similar constitutional violations to show a pattern of such violations resulting from the alleged deficient training." *Id.* Accordingly, Plaintiffs fail to assert non-conclusory factual allegations upon which a § 1983 failure to train or supervise claim can survive. However, as additional facts may cure these deficiencies, Plaintiffs will be allowed

leave to amend.

## IV.   CONCLUSION

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

While Plaintiffs only need to allege enough facts to "plausibly give rise to an entitlement to relief," that has not occurred here. *Iqbal*, 556 U.S. at 679. Therefore, the Amended Complaint fails to satisfy the pleading standards set forth by Rule 8 and 12(b)(6), and its dismissal is both warranted and necessary. Additionally, as Plaintiffs concede that Defendant Diaz is not liable under their Count Six – Unreasonable Seizure in violation of the Fourth Amendment, the Court will dismiss this claim against Defendant Diaz. (Doc. 20 at 2). Plaintiffs will be granted leave to amend Counts One, Two, Three, Four, Five, Seven, and Eight, as the addition of facts may cure the deficiencies identified by the Court throughout this Order. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 15) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiffs' Counts One against all Defendants, Count Two against Defendant City of Chandler, Count Three against Defendant City of Chandler, Count Four against all Defendants, Count Five against Defendant Diaz, Count Seven against Defendant Buenrostro, and Count Eight against Defendant City of Chandler are **dismissed without prejudice and with leave to amend** to correct the deficiencies identified in this Order.

///

///

///

///

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint no later than **September 27, 2025.**

Dated this 27th day of August, 2025.

_____
Honorable Steven P. Logan
United States District Judge