**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Mark Trujillo, et al.,

                Plaintiffs,

vs.

City of Chandler, et al.,

                Defendants.

No.  CV-25-00706-PHX-SPL

**ORDER**

Before the Court is Defendants' Buenrostro, Diaz, and City of Chandler's Partial Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 31), Plaintiffs' Response (Doc. 37), and Defendants' Reply (Doc. 41), as well as Plaintiffs' Supplemental Citation of Authority (Doc. 42). For the following reasons, the Court will grant Defendants' Motion.[1]

## I.    BACKGROUND

Plaintiffs Mark and Alba Trujillo, on behalf of themselves and their three minor children, bring various claims against Defendants connected to the shooting of Plaintiff Mark Trujillo. (Doc. 29 at 2). On March 3, 2024, Plaintiff Mark Trujillo contacted the Chandler Police Department to notify them that "an unstable next-door neighbor Luciano Gutierrez" had been threatening one of Trujillo's daughters. (*Id.* ¶ 1). Defendant Officer

---

[1]    Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Nicholas Buenrostro and Defendant Officer-In-Training Margaret Diaz (collectively, "Defendant Officers") reported to the scene with other Chandler Police Department officers. (*Id.* ¶¶ 2–3).

Plaintiff Mr. Trujillo was outside his home as the officers attempted to communicate with Gutierrez. (*Id.* ¶ 4). "As Gutierrez appeared in his doorway, other officers (besides Buenrostro and Diaz) fired multiple shots at Gutierrez, hitting and knocking him to the ground." (*Id.* ¶ 5). Mr. Trujillo began to "hurry across the driveway towards his home as the gunshots ran out." (*Id.* ¶ 6). As Mr. Trujillo crossed his driveway, Officer Buenrostro—who had parked down the street several houses away with Officer Diaz—fired a shot at Mr. Trujillo that severed his spinal cord. (*Id.* ¶ 8). This spinal cord injury paralyzed Mr. Trujillo, and he "will be paraplegic for the rest of his life." (*Id.* at 11, ¶ 79).

Plaintiffs assert that Defendant Officers Buenrostro and Diaz had an obligation to confirm whether it was safe to shoot before doing so and to confirm the identity of the target before shooting Mr. Trujillo. (*Id.* at 4). Their alleged failure to meet these obligations gives rise to Plaintiffs' constitutional claims and tort claims under state statutory and common law. (*See generally* Doc. 29). Plaintiffs also assert that Defendant City of Chandler ("Defendant Chandler") is vicariously liable for the tortious conduct of the Defendant Officers. (*Id.* at 9–12).

On February 28, 2025, Plaintiffs filed the present suit. (Doc. 1). On March 25, 2025, Plaintiffs filed the First Amended Complaint (Doc. 8), and the Court granted Defendants' Partial Motion to Dismiss (Doc. 15) with leave to amend to the claims. (Doc. 27). On September 24, 2025, Plaintiffs filed the operative Second Amended Complaint ("SAC"). (Doc. 29). The SAC brings five claims: (1) Negligence/Gross Negligence against Defendant Officer Diaz and vicarious liability against the City; (2) Assault and/or Battery against the Officer Defendants and vicarious liability against the City; (3) Loss of Consortium against Defendant Diaz and vicarious liability against the City; (4) Unreasonable Seizure in violation of the Fourth Amendment against the Officer Defendants; (5) Loss of Family Relationship in violation of the Fourteenth Amendment

2

against the Officer Defendants. (*Id.* at 9–14).

In Response to the SAC, Defendant Buenrostro filed a Partial Answer to the Battery claim in Count Two and the Fourth Amendment claim in Count Four. (Doc. 30). Defendants then filed a Motion to Dismiss the rest of the claims in the SAC (Doc. 31), which is fully briefed. (Docs. 37, 41, 42).

## II.     LEGAL STANDARD

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT, 2012 WL 79882, at *1 (D. Ariz. Jan. 11, 2012). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024) (citation omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.     DISCUSSION

The parties do not dispute the Court's consideration of extrinsic evidence. (*See* Docs. 29, 31, 37). The Court already addressed this issue in its August 27, 2025 Order. (Doc. 27 at 3–5). The Court will consider extrinsic evidence submitted by the parties in accordance with that Order, and only to the extent that it is relevant to the analysis here. ///

3

**A. Count One: Negligence/Gross Negligence**

Defendants argue that Plaintiffs' Negligence/Gross Negligence claim against Defendant Officer Diaz, and the vicarious liability claim against the City, fail under Arizona law. (Doc. 31 at 7–10). In Response, Plaintiffs allege that Defendant Officer Diaz "had the duty to intervene to protect [Plaintiff Mark Trujillo] and "[h]er omissions resulted in [Plaintiff Mark Trujillo's] injury." (Doc. 37 at 11).

As the Court explained in its previous Order, the Arizona Supreme Court has held that negligence claims cannot be based solely on an officer's intentional use of force. *See Ryan v. Napier*, 425 P.3d 230, 233 (2018). Specifically, this Court previously explained that Plaintiffs cannot proceed on a negligence claim against Defendant Diaz based on her alleged conduct of allowing Buenrostro to fire. (Doc. 27 at 7). Again, the Court is not aware of any authority allowing a plaintiff to bring a negligence claim based on one officer's alleged failure to intervene with another officer's conduct.

That is exactly the kind of claim Plaintiffs appear to allege here. The SAC alleges: "By allowing Buenrostro to fire, Diaz was also negligent and/or grossly negligent in working the scene and failed in her duty to protect [Mr. Trujillo], a victim of the unreasonable force used by Buenrostro." (Doc. 29 at 10, ¶ 67). The SAC cites to *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) and *O'Niell v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). *Gaudreault* states that a police officer "who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." 923 F.2d at 207 n.3. *O'Neill* similarly states that a law enforcement officer "has an affirmative duty to intercede" in the context of excessive force claims. 839 F.2d at 11. In the Response, Plaintiffs appear to argue that Defendant Diaz "had the duty to intervene" under Arizona law based on the law stating that an officer may be liable for failure to intervene under Section 1983. (Doc. 37 at 11 (citing *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)). The authority Plaintiffs offer in support of their negligence claim against Defendant Diaz is based on law concerning excessive force and Section 1983. That

law does not support a negligence claim.

Because the Court finds that Plaintiffs have not adequately alleged that Defendant Diaz was negligent, Defendant Chandler cannot be held vicariously liable. *Laurence v. Salt River Project Agric. Improvement & Power Dist.*, 528 P.3d 139, 150 (Ariz. 2023) ("Dismissing a tort claim against an employee because the claim lacks merit requires the court to also dismiss a claim against an employer under the doctrine of respondeat superior."). Therefore, the negligence claims against both Defendant Diaz and Defendant Chandler will be dismissed without leave to amend.

### B. Count Two: Assault/Battery

Next, Defendants argue that the claims in Count Two fail as to Defendant Diaz and Defendant Chandler. (Doc. 31 at 10–12). In Count Two of the SAC, Plaintiffs bring claims for Assault and/or Battery against the Defendant Officers. (Doc. 29 at 10–11). However, the only allegations under Count Two as to Defendant Diaz are for aiding and abetting Defendant Buenrostro. (*Id.* ¶ 73). "A claim for aiding and abetting a tort requires proof that (1) the primary tortfeasor has committed a tort causing injury to the plaintiff; (2) the defendant knew the primary tortfeasor breached a duty; (3) the defendant substantially assisted or encouraged the primary tortfeasor in the breach; and (4) a causal relationship exists between the assistance or encouragement and [the] breach." *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 988 (Ariz. Ct. App. 2008).

Defendants argue that Plaintiffs do not allege facts showing the third prong, that Defendant Diaz substantially assisted or encouraged Defendant Buenrostro in shooting Mr. Trujillo. (Doc. 31 at 11). In response, Plaintiffs argue that the third prong "can be inferred by the jury because Diaz's lack of action or statement . . . implies she encouraged" Defendant Buenrostro's actions. (Doc. 37 at 13). In the SAC, Plaintiffs allege that Defendant Diaz, "took no steps to assist Buenrostro," "took no steps to stop Buenrostro," and "took no steps to clarify the actual suspect," despite expressing "concerns about the potential of shooting an innocent man." (Doc. 29 at 6, ¶¶ 37–39). The SAC also alleges that Defendant Diaz asked Defendant Buenrostro "who was the suspect more than once."

(*Id.* ¶ 34). In sum, Plaintiffs describe Defendant Diaz's participation in the incident as follows: "Though she purported to be observing the scene, Officer Diaz did nothing whatsoever to stop Officer Buenrostro from shooting and paralyzing [Mr. Trujillo] and did nothing whatsoever to assist Officer Buenrostro in confirming that he was aiming at the wrong person." (*Id.* at 4, ¶ 26).

The Court agrees with Defendants that these allegations do not plausibly state a claim for aiding and abetting a tort. Plaintiffs do not allege that Defendant Diaz knew that Defendant Buenrostro breached a duty or that she assisted or encouraged him in any way. Instead, the allegations in the SAC describe that Defendant Diaz was concerned and questioned whether Defendant Buenrostro was shooting the right person. The allegation that she "did nothing whatsoever" does not amount to aiding and abetting. (*See id.*). The Court disagrees with Plaintiffs' argument that such conduct could be inferred by the jury and need not be alleged on the face of the complaint. Therefore, the claim in Count Two against Defendant Diaz will be dismissed without leave to amend.

As to the claim in Count Two against Defendant Chandler, Defendants argue that the City cannot be held vicariously liable for Defendant Buenrostro's alleged battery for the reasons the Court recognized in its August 27, 2025 Order. (Doc. 31 at 11–12; *see* Doc. 27). Plaintiffs do not dispute this argument in their Response. (Doc. 37). The Court explained in its previous Order that, for a public entity to be liable for an employee's intentional use of force, it must actually know of the employee's propensity to commit that particular act. *Harris v. Phoenix*, No. CV-20-00078-PHX-DLR, 2021 WL 4942662, at *1 (D. Ariz. Oct. 22, 2021); A.R.S. § 12-820.05(B). The SAC once again does not allege that Defendant Buenrostro had a propensity for this conduct or that Defendant Chandler had any knowledge about such a propensity. (*See* Doc. 29). The Court will also dismiss the claim in Count Two against the City of Chandler without leave to amend.

### C. Count Three: Loss of Consortium

In Count Three, Plaintiffs bring a loss of consortium claim against Defendant Diaz and Defendant Chandler. (Doc. 29 at 11–12). "An individual may make a claim for loss of

6

consortium against a tortfeasor whose conduct caused the claimant to lose 'society, companionship, care, support, and affection' within a marital or parent-child relationship." *Martin v. Staheli*, 457 P.3d 53, 58 (Ariz. Ct. App. 2019). In Arizona, "[l]oss of consortium is a derivative claim, which means that the success of a loss-of-consortium claim is dependent on the success of another claim." *Id.* (citations omitted). Here, Defendants are correct that the loss of consortium claim should be dismissed against Defendant Diaz because the other claims against her will be dismissed. *See Gagne v. City of Mesa*, CV-24-01337-PHX-SHD, 2025 WL 2257508, at \*13 (D. Ariz. Aug. 6, 2025). Therefore, the vicarious liability claim against Defendant Chandler also fails. Count Three will be dismissed without leave to amend.

### D. Count Four: Unreasonable Seizure

In Count Four, Plaintiffs bring a claim for Unreasonable Seizure in violation of the Fourth Amendment against the Officer Defendants. As to Defendant Diaz, Plaintiffs allege that as a result of her "failure to intervene, she, too, caused unconstitutional injuries." (Doc. 29 at 12, ¶ 88).[2] Plaintiffs allege that "she may also be liable as an integral participant." (*Id.* at 6, ¶ 32(C)) (quotations and citation omitted).

"[A]n official whose 'individual actions' do 'not themselves rise to the level of a constitutional violation' may be held liable under section 1983 only if the official is an 'integral participant' in the unlawful act." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (citing *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)). Liability as an integral participant may arise "in two situations: those in which (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant 'set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id.* (citing *Johnson v. Duffy*, 588

---

[2]    Plaintiffs also argue in the Response that Defendant Diaz is "separately liable for failing to intervene to protect [Mr. Trujillo's] rights." (Doc. 37 at 6). Despite these arguments, Plaintiffs do not bring a Failure to Intervene claim against Defendant Diaz in the SAC. (*See* Doc. 29).

F.2d 740, 743–44 (9th Cir. 1978)).

Defendants argue that the claim against Defendant Diaz in Count Four should be dismissed because "she was simply present at the scene"; she did not act as part of a common plan nor did she set in motion a series of acts that ultimately ended in the shooting. (Doc. 31 at 14). On the other hand, Plaintiffs argue that under the integral participant theory, Defendant Diaz "was an 'integral participant' in identifying the man to shoot—and she, like Buenrostro, failed miserably at making that identification." (Doc. 37 at 9). The allegations in the SAC do not show that Defendant Diaz knew about and acquiesced to a plan to shoot Mr. Trujillo. Instead, the facts show that Defendant Diaz asked who the suspect was, told Defendant Buenrostro that she was tracking the suspect, and asked questions indicating a concern about the use of deadly force on an innocent person. (Doc. 29 at 6). Another officer may be liable as an integral participant if they were "aware of the decision" to engage in unconstitutional conduct and "did not object to it." *Peck*, 51 F.4th at 889. But here, Defendant Diaz's conduct indicates concern and questioning, not awareness and acquiescence. Although Defendant Diaz was more involved than an officer who was "simply being present at the scene," the allegations do not plausibly allege that she was aware that Defendant Buenrostro was going to shoot the wrong person. Plaintiffs also do not allege that Defendant Diaz initiated a series of acts that she reasonably should have known would cause the constitutional violation to occur. Rather, the facts allege "bumbling inaction" on the part of Defendant Diaz. (*See* Doc. 29 at 6).

Because Plaintiffs have not alleged facts showing that Defendant Diaz was an integral participant in the alleged Fourth Amendment violation, the claim in Count Four against Defendant Diaz will be dismissed without leave to amend.

### E. Count Five: Loss of Family Relationship

In Count Five, Plaintiffs bring a claim for Loss of Family Relationship in violation of the Fourteenth Amendment against Defendants Buenrostro and Diaz. (Doc. 29 at 12–14). Defendants argue that the claims fail because "(1) Plaintiffs do not plead the required purpose to harm standard, (2) Defendants are entitled to qualified immunity on any claim

brought by Alba Trujillo, and (3) the SAC fails to plead specific facts as to the children's loss of family relationship." (Doc. 31 at 15).

The Fourteenth Amendment "right to family or to familial association is well established." *Branum v. City of Phoenix*, CV 21-00357-TUC-RM, 2022 WL 20741828, at *3 (D. Ariz. July 1, 2022) (citing *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011)). This right is clearly recognized for the parent-child relationship. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). However, the Ninth Circuit has not explicitly recognized or foreclosed the availability of such a claim for spouses. *Branum*, 2022 WL 20741828, at *3 (discussing lack of Ninth Circuit precedent and collecting district court cases recognizing spousal claims to familial association); *see also Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) (noting that the Ninth Circuit has not previously held whether a substantive due process right exists for spouses and declining to consider the issue as the familial-association claim failed on other grounds). However, the Court again finds it unnecessary to determine whether a loss of familial association claim is available to spouses at this time, as Plaintiffs' claim fails on other grounds.

In order for official conduct to violate a parent's due process rights, the conduct must "shock[] the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Courts consider the facts of the case in order to determine if an officer's conduct meets the "shocks the conscience" standard. *Id*. In urgent, emergency situations that necessitate "fast action" and involve "competing public safety obligations," a plaintiff must show that an official acted with a "purpose to harm" for reasons other than legitimate law enforcement objectives to meet the "shocks the conscience" standard. *Id.* at 1137–39; *see also Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998), *as amended* (Nov. 24, 1998) (finding purpose to harm standard appropriate when police responded to a gunfight in a large crowd because it was an extreme emergency); *Peck*, 51 F.4th at 893 ("We apply the purpose-to-harm standard when officials were required to make 'repeated split-second decisions' about how best to respond to a risk, such as during a high-speed car

chase or when confronting a threatening, armed suspect."). Alternatively, an official's "deliberate indifference" may violate a parent's Fourteenth Amendment rights under certain circumstances. *Porter*, 546 F.3d at 1137. For instance, deliberate indifference may rise to the level of shocking the conscience in situations where officers had extended opportunities for actual deliberation and still engaged in unconstitutional conduct. *Id.* at 1137–39. This standard is appropriate "when officials had 'ample time to correct their obviously [wrongful conduct],' such as in Eighth Amendment prisoner-treatment cases or in wrongful-detention cases." *Peck*, 51 F.4th at 893 (citing *Porter*, 546 F.3d at 1139).

In the August 27, 2025 Order, the Court determined that the purpose-to-harm standard applies to the facts at issue here because they reflect an emergent situation. (Doc. 27 at 14). Based on the facts alleged in the SAC, that determination still applies. Even though Plaintiffs allege that "Defendants Buenrostro and Diaz had ample time to positively identify the suspect before taking the shot," the circumstances do not reflect an extended opportunity for reflection and action. (Doc. 29 at 14). Rather, the facts show that the officers made fast-paced decisions "when confronting a threatening" suspect. *Peck*, 51 F.4th at 893.

Under the purpose-to-harm standard, a plaintiff must show that a defendant acted with a purpose to harm that was "unrelated to legitimate law enforcement objectives." *Porter*, 546 F.3d at 1137. Conduct such as purely reactive decision-making or responding to an emergency weighs against a purpose to harm finding. *See id*. at 1140. Instead, a plaintiff must show that an officer's intention was "to cause harm unrelated to the legitimate object of arrest," "induce . . . lawlessness, or to terrorize, cause harm, or kill," or to "teach [the suspect] a lesson" or "get even." *Id.* (citations omitted). Absent evidence of such intentions or evidence that an "officer's reaction was driven by anything other than his 'instinct … to do his job as a law enforcement officer,'" an officer will not be liable under the purpose to harm standard, even if the officer misperceived danger or "acted irresponsibly." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (citing *Lewis*, 523 U.S. at 855).

In the SAC, Plaintiffs allege that Defendant Buenrostro and Diaz's "acts and/or omissions exhibited a deliberate indifference and therefore shock the conscience." (Doc. 29 at 13, ¶ 96). Plaintiffs do not argue that the conduct meets the purpose-to-harm standard. (*See id.*). Plaintiffs allege that Defendants Diaz and Buenrostro were on the scene for seven and a half minutes and failed to positively identify the suspect. (*Id.* at 13). Meanwhile, the other officers radioed that they had shot the subject, and after five seconds of "absolute silence," Defendant Buenrostro fired the shot at Mr. Trujillo. (*Id.* at 14). Plaintiffs allege that these acts were "willful, wanton, malicious, and oppressive," but there are no facts to support these conclusory allegations. Indeed, the facts do not indicate that the Officer Defendants acted with any intention other than carrying out their law enforcement objectives. *See Porter*, 546 F.3d at 1137. Because the SAC does not plausibly allege that Defendants acted with purpose to harm, Count Five will be dismissed without leave to amend.

### IV.    CONCLUSION

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. As to the claims addressed in this Order, Plaintiffs have failed to allege enough facts to "plausibly give rise to an entitlement to relief." *Id.* Therefore, the following claims will be dismissed: Count One, Count Two as to Defendant Diaz and Defendant Chandler, Count Three, Count Four as to Defendant Diaz, and Count Five.

A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). This is Plaintiffs' Second Amended Complaint. (*See* Docs. 1, 8, 29). Plaintiffs were already granted leave to amend to address deficiencies relating to the negligence claim in Count One, the vicarious liability claim in Count Two, the loss of consortium claim in Count Three, the Fourth Amendment unreasonable seizure claim in Count Four, and Fourteenth Amendment loss of family

relationship in Count Five. (*See* Doc. 27). The SAC fails to cure the deficiencies previously identified. Further, the Court finds that additional facts would not cure the defects in the aiding and abetting assault claim against Defendant Diaz. The facts supporting that claim are the same as those behind the negligence claims and the Fourth Amendment claims. All of those claims fail as a matter of law and leave to amend would not change that outcome. Plaintiffs have already been granted leave to amend; the Court will decline to do so again. *See Ecological Rights Found. V. Pac. Gas and Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) ("[T]he court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended [the] complaint.") (citation omitted).

Therefore, the claims discussed in this Order will be denied without leave to amend. The only remaining claims are Count Two and Count Four, as to Defendant Buenrostro. (*See* Doc. 30).

Accordingly,

**IT IS ORDERED** that Defendants' Partial Motion to Dismiss (Doc. 31) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims in Count One, Count Two as to Defendant Diaz and Defendant Chandler, Count Three, Count Four as to Defendant Diaz, and Count Five are **dismissed with prejudice and without leave to amend**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **terminate** Defendant Margaret Diaz and Defendant City of Chandler as parties to this action.

Dated this 30th day of April, 2026.

Honorable Steven P. Logan
United States District Judge